# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY DUNCAN,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | 1:10-cv-2143 BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## **BACKGROUND**

Plaintiff Terry L. Duncan ("Plaintiff"), who is proceeding pro se, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Barbara A. McAuliffe, United States Magistrate Judge.

**FACTS AND PRIOR PROCEEDINGS**[1]

In December 2007, Plaintiff filed applications for disability and supplemental security income benefits, alleging disability beginning May 17, 2002. *See* AR 87-93, 94-96. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Sandra K. Rogers held a hearing and issued an order denying benefits on September 24, 2009, finding Plaintiff was not disabled. AR 12-19. Thereafter, on September 9, 2010, the Appeals Council denied review. AR 1-5. This appeal followed.

**Hearing Testimony**

ALJ Rogers held a hearing on April 13, 2009, in Modesto, California. Plaintiff appeared and testified. At the time, he was represented by attorney Gary C. Nelson. Vocational Expert ("VE") George C. Meyers also testified. AR 21-44.

Plaintiff was fifty-one years old at the time of the hearing. AR 37. He currently has no source of income, but receives food stamps from Stanislaus County. AR 37. Plaintiff testified he was homeless until his ex-wife allowed him to stay in the trailer behind her house. AR 38. Immediately prior to the hearing, Plaintiff's ex-wife told him that he needed to move out of the trailer because she was selling her home. Plaintiff indicated that he had nowhere else to go and expected to be homeless again after moving from the trailer. AR 39

When asked about his previous employment, Plaintiff testified that he worked for a communications company installing cables for over 10 years. Since being laid off, he has attempted to find work, but has been unable to do so due to his impairments. AR 24.

When asked about his physical impairments, Plaintiff testified to experiencing pain in his lower back, neck, and shoulder. AR 24. Plaintiff stated that although his pain began around 2002, he did not start seeing a doctor until 2007. Plaintiff delayed treatment because he forgot he had access to veterans insurance. AR 24. Plaintiff testified that the doctors at the Veterans

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Administration ("VA") hospital stated that they could not find anything physically wrong with him based on his x-rays, and that he has requested an MRI. AR 26. Plaintiff currently takes morphine for pain (AR 27, 28), and due to his pain he can no longer walk much or ride a bicycle. AR 28. He stated that he might be able to walk a block, then would have to stop to lay down. AR 29. Plaintiff also uses a cane that was not prescribed by his doctor. He also claimed that he could only sleep for two hours at a time. AR 32.

When asked about his mental impairments, Plaintiff testified that he had been diagnosed with borderline personality disorder that began after his wife left him. AR 24-25. Plaintiff also stated that a doctor at the VA diagnosed him with adjustment disorder with depressed mood. AR 31. He saw a psychiatric nurse, but has not received any other counseling or mental health treatment. AR 31.

On a daily basis, Plaintiff indicated that he has trouble sleeping through the night, getting up about five or six times. AR 34. He does not do his own laundry or yard work, but he does attend to his own personal grooming like bathing and dressing. While Plaintiff does have a driver's license, he claims he does not drive because it causes him pain. AR 35. He has a female friend who does the grocery shopping. AR 35.

Thereafter, the ALJ elicited testimony from VE George Meyers. AR 40. In a hypothetical question to the VE, VE Meyers was asked to assume a hypothetical person of the same age, education and work experience as Plaintiff, who was limited to light work, but could only do simple repetitive tasks as opposed to skilled work. VE Meyers indicated such an individual could perform work as a cashier, hand packer, and assembler of small products. AR 41.

**Summary of the Medical Record**

The entire medical record was reviewed by the Court. AR 175-295. The record is summarized in chronological order as follows. Plaintiff commenced his care with the Veteran's Administration in Modesto in June 2007. He was examined on June 28, 2007. AR 208-14. He complained of shoulder, lower back, and neck pain. He denied any past medical issues other than his back. AR 208. Examination of Plaintiff's cervical spine revealed that "vertebral bodies are

normal" that the "pedicles [were] intact," and that the "interspaces [did] not appear narrowed." The result of the examination was that of a "normal cervical spine." AR 211-12, 262-63, 271-72. An examination of Plaintiff's lumbar spine showed "minimal scoliosis" of the upper lumbar region. AR 211, 262, 271. A urinalysis was positive for amphetamines and marijuana. AR 214.

On July 11, 2007, Plaintiff tested positive on a depression screening. AR 205, 265. Further, Calvin Reckord, M.D., noted that Plaintiff's x-rays showed "minimal DJD" (degenerative joint disease), and wrote a prescription for vicodin and flexeril. Dr. Reckord also noted that Plaintiff reported occasional methamphetamine use. AR 263. Otherwise, Plaintiff presented in "no acute distress." AR 261. Plaintiff was taking 400 mg of ibuprofen, three times per day, for pain. AR 261. On August 15, 2007, the VA conducted a "Multidisciplinary Assessment and Treatment Plan" regarding Plaintiff's mental status. AR 188-97, 247-256. Plaintiff stated that he had never attempted suicide, but thought about it once, and last used marijuana "a few months ago" and that he was currently doing a drug diversion program. AR 190, 194, 249-50. After the mental status examination, Plaintiff was diagnosed with borderline personality disorder with depressive symptoms. AR 195, 254.

On October 15, 2007, Plaintiff went to physical therapy at the VA for his low back pain. AR 179-181, 239-241. Kevin Ochs, a physical therapist, noted that Plaintiff was in no apparent distress, and that Plaintiff stated that he biked approximately four times a week for one to two miles. AR 180. On January 16, 2008, Plaintiff's psychiatric functioning was evaluated by Kevin Gregg, M.D, a State agency psychiatrist. AR 217-227. Dr. Gregg based his evaluation on his review of Plaintiff's medical records. Applying the social security disability definitions, Dr. Gregg opined that Plaintiff's personality disorder was not severe. AR 217. Dr. Gregg concluded that Plaintiff would have no restriction of activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence and pace, and had no episodes of decompensation. AR 225. On May 16, 2008, Dr. Gregg's opinion of non-severity was confirmed by a second reviewing psychiatrist, Archi R. Garcia, M.D. AR 276-77.

On January 14, 2008, Plaintiff's physical functioning was evaluated by Ernest Wong, M.D., a State agency physician. AR 216. Dr. Wong, based his evaluation on his review of Plaintiff's

medical records. Dr. Wong opined that Plaintiff had not established a severe physical impairment. AR 216.

On a January 31, 2008, at follow-up appointment with Dr. Reckord, a chest x-ray of Plaintiff's lungs was normal. AR 236. Dr. Reckord again noted Plaintiff's back pain due to his "minimal" degenerative disc disease (AR 238), but also noted that Plaintiff was "in no acute distress." AR 237. Dr. Reckord noted that Plaintiff's medications included one 600mg tablet of ibuprofen as needed for pain, and 1000mg of methocarbamol for muscle spasms. AR 237. Plaintiff also stated that he ran out of Percocets. AR 237.

**Medical Evidence Following ALJ's Decision**

In his opening brief, Plaintiff attaches a mental health evaluation from William Boyer, M.D. dated September 28, 2011, two years after the ALJ decision. The report purports to evaluate Plaintiff's mental condition as of October 2010, over a year after the ALJ decision. *See* (Doc. 14 at 13-17). Plaintiff also attaches a radiological report of a magnetic resonance imaging (MRI) scan of Plaintiff's lumbar spine that was taken on September 30, 2009, and submitted to the Appeals Council. AR 293-94. After reading the scan, the VA radiologist assessed the primary diagnostic code category as showing a "minor abnormality." AR 294. However, according to Plaintiff, the MRI shows that "two of his disks have tears in them, I have arthritis in one of my back bones, and my syattic [sic] nerve is pinched." (Doc. 14 at 1).

**ALJ Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 12-19.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 17, 2002. AR 14. Further, the ALJ determined that Plaintiff established a severe back impairment, but did not establish a severe mental impairment. AR 14. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 15.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to complete the full range of light work. AR 15. Relying on the

testimony of the vocational expert, the ALJ found that Plaintiff could perform his past relevant work as a cable supervisor, as well as other jobs existing in the national and regional economies. AR 17.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that (1) the ALJ's decision is not supported by substantial evidence and

(2) that his case should be remanded to consider the evidence attached in his opening brief. (Doc. 14 at 1-7).

**DISCUSSION**

**1.   Diagnosis versus Disability**

In his opening brief, Plaintiff contends that doctors have told him that he "wore out his back" and that he has been given a mental evaluation. Based on this evidence, Plaintiff believes the ALJ erred in finding that he did not have an impairment. (Doc. 14 at 1). Initially, this Court notes that to the degree Plaintiff argues that the various diagnoses by his physicians establish he is disabled, he is mistaken. Plaintiff is advised that the mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d at 1549. Therefore, despite Plaintiff's assertions that he has been diagnosed with "severe back impairment" and a significant mental impairment, these diagnoses alone do not entitle him to a finding of disability.

ALJ Rogers' findings acknowledge the severity of Plaintiff's back impairment. But those findings do not preclude the ALJ from finding that Plaintiff is capable of performing some work—work that would take into account the limitations caused by this severe impairment—and thus is not disabled.

**2.   The SSA's Determination was Based on Substantial Evidence**

Plaintiff argues in his motion that the ALJ's determination was not based on substantial evidence because the ALJ relied on reports from doctors that occurred in "the first few months of...seeing the doctor." (Doc. 14 at 1). However, it was Plaintiff's burden to produce complete evidence of his disability, and his failure to do so does not undermine the substantiality of the other evidence the ALJ considered in making his decision. The ALJ reviewed the evidence before her and her findings are supported by substantial evidence.

A claimant's residual functional capacity ("RFC") is what a claimant can do in spite of his medical impairments. 20 C.F.R. § 404.1545. In assessing a claimant's RFC, an ALJ considers relevant evidence, such as a medical history, clinical signs and laboratory findings, effects of treatment, daily activities, and medical source opinions. Social Security Ruling ("SSR") 96-8p. Medical source opinions are statements from physicians and psychologists and other acceptable

medical sources that reflect judgments about the nature and severity of a claimant's medical impairment(s), including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment(s), and the claimant's physical and mental restrictions. 20 C.F.R. § 404.1527(a)(2). Nevertheless, the ALJ, not a physician, determines the claimant's RFC, and ultimately, whether a claimant is "disabled" under the Social Security Act. 20 C.F.R. § 404.1527(e)(1) and (2); SSR 96-5p.

In her decision, the ALJ performed the statutory five-step evaluation described in the regulations accompanying the Social Security Act and based her determinations at each step on the medical record, the reports of the state agency reviewing physicians, testimony of the vocational expert, and the ALJ's own in-court observation of Plaintiff. AR 16-17. In this case, the only opinions that assessed Plaintiff's functional limitations were the findings of the reviewing internist Dr. Wong, and reviewing psychiatrists, Drs. Gregg and Garcia. Drs. Wong, Gregg and Garcia each found that Plaintiff failed to establish a severe medical impairment. AR 216, 217, 276-77. In fact, the ALJ gave Plaintiff the benefit of the doubt, by reducing the weight given to the state agency physicians opinions. AR 17. ALJ Rogers stated:

> as far as the opinion evidence, I have given the state agency consultative physicians' opinions less weight than they might ordinarily deserve. I find that the record does support a finding of a severe physical impairment. However, I am in agreement that the claimant does not have a severe mental impairment despite a diagnosis. Nonetheless, I have also considered, later in this decision, that the claimant could be limited to simple repetitive tasks.

AR 17.

The ALJ credited Plaintiff's testimony to a degree, finding a severe back impairment and restricting Plaintiff to a relatively conservative RFC of light-level work, even in the absence of affirmative objective medical evidence. AR 14-15. However, the ALJ discounted the majority of Plaintiff's subjective symptom testimony and gave a multitude of clear and convincing reasons for doing so. ALJ Rogers stated that Plaintiff's disabling limitations are not credible to the extent alleged because:

- The claimant is not taking the type of pain medication associated with severe disabling pain.
- The claimant's allegations of pain and limitation are in excess of what would reasonably be expected from his objective medical evidence.
- The claimant complains of pain and has been given pain medication, but his x-rays only show minimal degenerative disk disease, at best. On June 28, 2007, his x-ray showed minimal scoliosis of the upper portion of the lumbar spine. On July 11, 2007, his x-ray showed a normal cervical spine.

- On July 25, 2007, the claimant's strength was normal. He had no paraspinal tenderness or spasms and was able to walk on his heels and toes.
- On September 11, 2007, it was noted that the claimant had no radiculopathy. Further, there were no sensorimotor deficits on examination. As such, no MRI was ordered as there was a low probability that he would be a surgical candidate.
- On October 15, 2007, the claimant was seen for his back and neck pain complaints and he was started on exercise. He was not referred to physical therapy or to any other specialist.
- On October 15, 2007, the claimant stated that he biked approximately 3-4 hours a day and walked about 4 times a week for 1-2 miles. He also stated that he shopped and was able to weed in the garden for 10 minutes at a time.
- There is no medical opinion of disability.
- The claimant's back treatment has been conservative.
- The claimant has not had any weight loss.
- The claimant has no significant atrophy of the shoulders.
- The record shows that the claimant has past history of methamphetamine use. Notably, as of June 2007, he was occasionally still using. However, there are no limitations listed.
- On August 15, 2007, the claimant refused mental health services that were offered.
- The claimant is able to perform his personal care needs without assistance.
- The claimant was capable of attending the hearing and participating on his own behalf.

AR 17.

While Plaintiff challenges the ALJ's interpretation of the evidence, the responsibility for evaluating and interpreting the evidence lies with the ALJ. Moreover, where Plaintiff simply offers a different interpretation of the evidence, the ALJ's assessment must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). The factors cited by the ALJ constitute a reasonable interpretation of the record and the ALJ set forth numerous clear and convincing reasons for rejecting Plaintiff's credibility. Therefore, the ALJ's light work RFC is supported by substantial evidence and free of legal error.

**3.      Plaintiff's New Evidence Does Not Warrant Remand**

Plaintiff has attached additional medical evidence to his briefing not previously submitted to the ALJ. Plaintiff's new evidence consists of a radiological report dated September 30, 2009, which was submitted to the Appeals Council, and a mental health evaluation from Dr. Boyer, a psychiatrist at the VA examining a period beginning in October 2010. Defendant contends to the degree the evidence is new, it is improper. The Court determines that while the evidence is new, it is at best cumulative, and does not change the outcome of this case. New evidence is only considered material if it bears directly and substantially on the decision in this case. *See Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985).

Under 42 U.S.C. § 405(g), "in determining whether to remand a case in light of new

evidence, the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." *Mayes v. Massanari*, 276 F.3d 453, 461-62 (9th Cir. 2001). To be material, "the new evidence must bear 'directly and substantially on the matter in dispute.'" *Id.* at 462 (citation omitted). To demonstrate good cause, "the claimant must demonstrate that the new evidence was unavailable earlier." *Id.* "If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied." *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) (citation omitted). In addition, the claimant must prove to the reviewing court's satisfaction that there exists a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him." *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984).

In this case, Plaintiff contends the new evidence supports the allegations of his back impairment and his borderline personality disorder. However, evidence supporting these allegations was already included in the record. The ALJ questioned Plaintiff about his borderline personality disorder at the hearing and the ALJ reviewed the medical evidence concerning Plaintiff's back impairment. As to the evidence that is duplicative, there is no reasonable possibility that these duplicate medical records would have changed the ALJ's findings. *Booz v. Secretary of Health and Human Services*, 734 F.2d at 1380. Additionally, to the degree the new evidence is dated after September 24, 2009—the date of the ALJ's decision—it is outside the relevant time period, is therefore not material, and thus cannot properly be considered. *Sanchez v. Secretary of Health and Human Services*, 812 F.2d at 511.

Further, simply submitting a more favorable medical report obtained well after the ALJ's decision does not establish good cause. *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990). Rather, the claimant must establish good cause for not seeking the expert's opinion prior to the denial of the claim. *Id.* Further, Plaintiff has not established that he *could not* obtain this evidence prior to the administrative hearing. He simply *did not* obtain this evidence. Thus, the radiological report and

the mental health evaluation were not "unavailable" in any meaningful sense at the time of the hearing—they simply did not yet exist because of Plaintiff's failure to obtain them.

Finally, where a claimant believes that new evidence supports a claim for disability, the proper procedure for submitting the evidence is in the context of a new application for benefits. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000). Therefore, Plaintiff is certainly entitled to submit a new application for benefits. As it stands however, this evidence does not support a reversal of the ALJ's September 2009 determination.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Terry Duncan.

IT IS SO ORDERED.

**Dated:   September 21, 2012**                    **/s/ Barbara A. McAuliffe**
                                                                        UNITED STATES MAGISTRATE JUDGE